We have a motion for bail pending appeal, United States v. Bodova. We'll hear from the parties first in that. Good morning. May it please the court. Mike Bottillo on behalf of defendant appellant Christine Bodova. We are here on Ms. Bodova's motion for bail pending appeal. If bail is denied, Ms. Bodova, an accomplished architect with no prior criminal history, will end up serving out her entire 366-day sentence before receiving a ruling on the merits of her appeal. Could we expedite the appeal to deal with that concern? We would certainly appreciate that. We've made efforts on our own behalf to do so. We're filing our merits brief on Friday. I was going to ask you that. So you expect to file on Friday, and we'll talk to the government about what they can do. We still want to hear you on the bail pending appeal, but I would want to make sure we understood the policy. Yes, Your Honor. But we're doing everything we can on our end reasonably to get our appeal brief on file in the time we have and to minimize the potential prejudice to our client, Ms. Bodova. The only question before the court now is whether Ms. Bodova's appeal will raise a substantial question. That does not mean that we have to show we are likely to win. We're not asking you to predict the outcome. A substantial question under this circuit's law is merely something more than not frivolous, a close question that well could be decided the other way. And we believe Ms. Bodova has amply met that standard here. I would like to focus on the jury instruction argument. This is not a typical embezzlement case. This is not a case where Ms. Bodova is alleged to have dipped into any of the existing 401k plan's $2.7 million account. Instead, the allegation was that she failed to remit over a two-year period roughly $125,000 from the company's operating account to the 401k plan account. The government's theory was that so long as any 401k plan funds have not been remitted, that any funds that Ms. Bodova had paid out of the operating account was embezzlement. Ms. Bodova's defense, however, was that she believed she was authorized to make the expenditures out of the company's operating account because the company was in dire financial straits, it could not meet its obligations through its own operations, and so her family was pouring millions of dollars of personal funds into the company's operating account. When she authorized payments out of that account, her belief was, I'm using my family money that we're put into this operating account to pay these expenses. I did not believe I was misappropriating 401k funds. So the entire defense turned on Ms. Bodova's intent. And in particular, it turned on whether or not she possessed the specific criminal intent to deprive plan users of the 401k fund that this court has held as required. Yes, Your Honor. Did some of the expenditures go to things like memberships in clubs and that kind of thing? Yes, Your Honor. Certain expenditures were paid for things like employee salaries. In fact, millions of dollars were paid for salaries and benefits. Other expenditures were paid for personal expenses such as the Bodova's golf club memberships, a membership in a yacht club, things like that. And in fact, that's exactly what the government highlighted. Without the 401k's being paid. But we are not the fact finders. Yes, Your Honor. So tell us what the errors were that you think meet the standard of bail on appeal. Yes, Your Honor. So as I was getting to, the entire case turned on the critical distinction of intent and whether or not Ms. Bodova possessed specific criminal intent to deprive users of the plan fund as is required for a section 664 violation or whether she merely believed that she was failing to comply with ERISA. You have only a minute left. Yes, Your Honor. What's the error? The error was that we requested an instruction that would have specifically tied the element of intent to the actus reus of the intent. We requested an instruction that the plan that to find knowledge, it must prove that the assets had unlawfully been taken by theft or embezzlement. The district court acknowledged that was a standard in her own in limine motion. The language was taken directly from sand federal jury instructions. The district court, however, did not ultimately give that instruction. Instead, she instructed that it was sufficient if you find that the plan funds were wrongfully taken. She instructed, but the problem is in this context. So what you wanted were the words embezzlement? That they were wrongfully taken by theft or embezzlement. Yes, Your Honor. Because in this context, wrongful, the jury well could have understood that to be, I think the intent was satisfied by knowing violation. Wrongful, do you mean willful or wrongful? Well, it was knowing, the question was how do you define knowing and willful? And it was a, excuse me, an unlawful, an unlawful, that they were wrongfully taken by, unlawfully taken by theft or embezzlement. That was the standard. The court argues that when the instruction is read as a whole with other parts of that, the point you're urging is, in fact, made. And, of course, the standard of review will be to read, to look at the instruction as a whole. How do you respond to the government's argument that read as a whole, the charge does give the instruction you were basically looking for? My response to that is reading the charge as a whole simply compounds the problem. The court instructed the jury that the intent is satisfied if you found that the defendant acted with a bad purpose. Here, the jury well could have understood that to mean the bad purpose of violating ERISA. No, but the judge specifically instructed them that it couldn't be that. That part of the instruction is in the charge. Your Honor, I'd respectfully disagree. What the court instructed the jury was that, and after it said you may consider a violation of her ERISA fiduciary duties as relevant to whether she acted knowingly and willfully, it said, however, that is not sufficient to convict Ms. Bedova. All of that means is that they still had to find the two other elements of the offense. That does not inform the jury that a knowing violation of her ERISA duties does not satisfy the element of intent. And that is the precise question. Did you make the argument after the judge gave the charge? Your Honor, so while we were, we saw an instruction that specifically would have done that. The judge gave its instruction. Did you argue to the judge that its instruction about ERISA violations not being enough was inadequate because it wasn't specifically focused on intent? After the charge, no instruction was given. Excuse me. No objection was given. Excuse me. To that specifically. However, to be clear, the government exploited this issue during its closing. It came out and it argued, how does this go intent? What Ms. Bedova is doing is a violation of ERISA. That is disregard for the law. That is intent. You made this argument, but my point is, was to ask you whether after all this happened, you raised an objection, and the answer is no. Excuse me, Your Honor. No, excuse me. Respectfully, if I could say, after the government went on to make that point and to hit that point in its closing argument, an objection was made. To the government's summation, not to the charge. We came in and requested and said, look, we need some clarification. What they have done is argued that an ERISA intent, knowing violation of ERISA satisfies the intent, you have effectively, I believe the exact words were, essentially reduced the level of intent and knowledge to say you're violating ERISA. You are establishing your intent element. That was the objection that was given at that time, and the district court refused to give a clarifying instruction saying, I believe what the judge has said. We understand that's a separate claim. All right, thank you. Let's hear from the government. Thank you, Your Honor. May it please the court. My name is Dina McCloud. I'm an assistant United States attorney in the Southern District of New York. I represent the government on appeal, and I represented the government in the proceedings below. Judge Caprone did not err in denying Bodova's motion for bail pending appeal. This is not a close case for bail pending appeal, nor are any of the three claimed errors close questions that would likely lead to reversal or a new trial. Just to focus on the jury instruction argument, which was the subject of the main discussion with defense counsel. Judge Sand's pattern instruction does use the words theft or embezzlement, which is what the defendant requested. That's correct, Your Honor. And, Judge Caprone, just to be very clear about the- How was the charge that the district court gave sufficient? It was different in that respect. Two points. First, the question as to wrongfully taken versus wrongfully taken by theft or embezzlement. I think Judge Caprone made the point a number of times during the charge conference, A, that she didn't want to say in five words what could be said in two words or something to that effect, and B, that by the time you reach the third element, it's clear that at that point you're defining the mens rea of the first element, the actus reis, and therefore it's implied by the time you get to the third element that the jurors have already decided that the actus reis of theft or embezzlement has occurred, and now they are turning to- Wrongfully taken is much broader than wrongfully taken by theft or embezzlement. Would you agree with that? I don't necessarily agree with that because I think in the context of the intent charge as a whole, it's clear that it's referring to wrongfully taken by theft or embezzlement. The third element is, again, incorporating, in effect, the first element. She argues that in part this confusion is a product of your summation, in which at one point you suggest that the multiple ERISA violations manifest the intent, and that that's the concern here. That's right, and that argument was based on a different part of the intent charge that Judge Caproni gave. But the argument is that this could be confusing to the jury, and it could think that because you argued that wrongful ERISA violations manifested the culpable intent, that when they heard wrongfully took or wrongfully taken, they could have thought it meant the ERISA violation. I think given that there's a clear record here, that there's essentially no way the jury could have understood that as a court. That's a conclusion. Tell us how the record is enacted. Because the charge on intent made very clear, in fact there was a fairly substantial paragraph in the charge that discussed how the ERISA violation or the violation of ERISA duties could play into a consideration of intent. And in that charge, Judge Caproni, I think the words themselves were, let me be very clear, this is a criminal case. You cannot convict on a civil violation of ERISA. However, you can take into consideration as one factor, the fact that there may have been a civil breach of fiduciary duty in considering whether... Is this a frivolous argument, in your opinion? The defendant's argument on the jury instruction? I don't want to use the word frivolous. I would say it is without merit. And a lot of this is because this wasn't a... Substantial? Is it a substantial argument? Certainly not. This is a question, and to Judge Rodgers' point, this would be reviewed for plain error. There were multiple points at which the defendant could have objected to this specific instruction. I asked whether it would be reviewed for plain error. Counsel suggests not, because he objected to your charge and that these are linked. So that, too, might be a question. That's right. And to be very clear about the record here, at the charge conference, defense counsel made this request for the specific charge wrongfully taken by theft or embezzlement. Judge Caproni said she would add it. That night, she sent around a red line of the revised charge to the parties, which had the charge that was to be given the next day in that red line. And Judge Caproni refers to that on the very first line of the July 12th transcript is, is there any objections from the parties to the charge that I sent around last night? There was no specific objection. Your Honor, actually, we really need that by theft or embezzlement language in there. It makes a huge difference. Any arguments about risk of flight? No. No, Your Honor. So, unless there are any additional questions on the evidentiary issues here, which I think are very clear from Judge Caproni's opinion, our Is there any problem, just to follow up on Judge Raggi's earlier questions, with expediting this appeal? From the government's point of view, no. I think I personally would have to speak to appeals. But I don't think that that would be an issue. I'm sorry, Your Honor? You were trial counsel. Would you not be writing the appeal? I would be writing the appeal, Your Honor. So, we've heard from the defendant that their brief will be filed the end of this week. How long is the government going to need to file its papers? Typically, we have 90 days. The government could probably file— That's not what we're talking about. This is expedited. Can you file your brief in three weeks? It's a very discreet issue. I think we could get the brief done in 30 days. All right. We'll consider this, but we have primarily the request for bail pending appeal. All right. It is a bail matter. We will consider it promptly and try and get you a response as quickly as we can. Thank you very much.